# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHARLENE BYNUM, | Case No.: 2:17-cv-02102-APG-VCF |
| Plaintiff | **Order Denying Motion for Reconsideration, Denying as Moot Motion for Judgment, and Directing Entry of Final Judgment** |
| v. | |
| CITY OF LAS VEGAS, et al., | [ECF Nos. 195, 202] |
| Defendants | |

Plaintiff Charlene Bynum moves for reconsideration of my order granting summary judgment in favor of Correct Care Solutions, LLC (CCS) and its employees Joe Haplin, Francesca Noce, Joseph Avena, Lara Nares, Christopher Nehls, Haydee Tolentino, Christina Schade, Barbara Buttino, John Darden, and Jennifer Swan (CCS Defendants).[1] The CCS Defendants oppose reconsideration and separately move for entry of final judgment.

I deny the motion for reconsideration. I deny as moot the CCS Defendants' motion for entry of judgment because I direct the clerk of court to enter final judgment as to all remaining defendants.

## I. MOTION FOR RECONSIDERATION

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)). "Reconsideration is appropriate if

---

[1] In this same motion, Bynum moved for reconsideration of my order granting judgment on various claims in favor of the City of Las Vegas and its employees. However, Bynum settled her claims with those defendants so her motion for reconsideration is moot as to them.

the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A district court also may reconsider its decision if "other, highly unusual, circumstances" warrant it. *Id.* "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *In re AgriBioTech, Inc.*, 319 B.R. 207, 209 (D. Nev. 2004). Additionally, a motion for reconsideration may not be based on arguments or evidence that could have been raised previously. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

As an initial matter, Bynum's motion is untimely. Under Local Rule 59-1(c), motions for reconsideration "must be brought within a reasonable time." Bynum waited over two months to move for reconsideration and she does not explain the delay. Moreover, all of the evidence Bynum presents to support her motion for reconsideration,[2] along with the arguments related to that evidence, could and should have been presented in response to the motion for summary judgment but were not. I therefore do not consider this evidence or the related argument.

**A. Fourteenth Amendment Denial of Medical Care**

To prevail on a claim of denial of medical care to a pretrial detainee under the due process clause of the Fourteenth Amendment, a plaintiff must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—

---

[2] In support of her reconsideration motion, Bynum presents unauthenticated photos of a wound to Mr. Bynum's coccyx, a contract between the City of Las Vegas and CCS, and City of Las Vegas's procedures for admission to a detention center. ECF Nos. 202-1 through 202-4.

making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro v. Cnty. of L.A.*, 833 F. 3d 1060, 1071 (9th Cir. 2016) (alteration in original)).

### 1. CCS

On reconsideration, Bynum argues that CCS "clearly had a policy of ignoring the timely medical screening of combative patients like Mr. Bynum and of ignoring the likely mental illness of patients." ECF No. 202 at 7. Bynum does not cite to evidence of any such CCS policies. Instead, Bynum cites to pictures of a wound to Mr. Bynum's coccyx. But that was not presented in response to the summary judgment motion nor was any argument made about such an injury. I therefore do not consider it. She also cites to the report of her expert, Dr. Duran. But Duran does not identify any CCS policy either. He opines that Mr. Bynum should have been seen by a doctor within two or three hours of arrival, but he does not opine that CCS had a policy of not timely screening combative patients or of ignoring patients' mental illness. The fact that Bynum was not screened by a doctor within two or three hours of arrival does not establish that CCS has a policy of not screening combative patients or of ignoring patients' mental health.[3] *See Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (isolated or sporadic incidents cannot

---

[3] In response to the summary judgment motion, Bynum noted that several CCS nurses testified that there was no change to CCS's procedures after Bynum's heart attack or after the deaths of several other inmates. *See* ECF No. 178 at 6, 7-8, 10-11. But that provides no information about what CCS's policies were before Bynum's heart attack or how they were deficient.

3

form the basis of municipal liability unless the incident was caused by an unconstitutional policy attributable to a municipal policymaker).

Bynum also states in her reconsideration motion, without citation to evidence, that CCS's training policies "were not adequate to prevent the failure to do timely medical screenings of combative inmates," and that CCS ratified its employees' conduct. ECF No. 202 at 8. Such unsupported argument does not provide a basis for reconsideration. In response to the summary judgment motion, Bynum argued ratification based on testimony that several nurses were unaware of any investigation and none was disciplined after Mr. Bynum's heart attack. *See, e.g.*, ECF Nos. 178-16 at 52-53; 178-21 at 50-51. But she does not identify any CCS policymaker who ratified conduct, and the "mere failure to discipline . . . does not amount to ratification . . . ." *See Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir.2014), *reversed in part on other grounds*, 575 U.S. 600 (2015). I therefore deny Bynum's motion for reconsideration as to CCS.

### 2. Haplin, Avena, Nares, and Darden

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that each defendant personally participated in the alleged rights deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). In her reconsideration motion, Bynum argues that she met her burden of raising a genuine dispute that each individual CCS defendant personally participated in the alleged constitutional violation by simply grouping them all together without identifying what each defendant did or failed to do. Indeed, in the reconsideration motion, Bynum does not mention a single CCS defendant by name or point to evidence as to what that particular defendant did. The response to the motion for summary judgment mentioned some defendants by name and indicated what they did or did not do, although that information was often irrelevant. For

example, the response indicated that Nares did not try to find out, after the fact, why Mr. Bynum had a heart attack. That is irrelevant to whether Nares was deliberately indifferent to Mr. Bynum's serious medical need before the heart attack.

Bynum's method of lumping all defendants together and attempting to blame them all based on the mere fact of Mr. Bynum's heart attack is inappropriate and particularly troubling with respect to defendants Haplin, Avena, Nares, and Darden. The evidence demonstrates these defendants did nothing except respond to the code blue after Mr. Bynum had a heart attack. *See* ECF Nos. 178-3 at 3-4 (Haplin was the charge nurse informed of the code blue and responded to assist, Avena attempted to revive Bynum, and Darden and Nares responded to the code blue); 178-5 at 4 (Haplin ordered the transport to the hospital). There is no evidence or argument that the life-saving efforts employed in response to the code blue were negligent, much less deliberately indifferent. Bynum's own expert concluded those efforts met the standard of care. ECF No. 178-8 at 3. Yet Bynum moves for reconsideration to keep these defendants in the case even after I noted that she had not adequately identified what each defendant did or did not do that may subject them to liability. *See* ECF No. 191 at 22-23. I deny the motion for reconsideration as to these defendants.

### 3. Buttino, Noce, Nehls, Tolentino, Schade, and Swan

As to the remaining nurse defendants, Bynum relies on Duran's report and the case of *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175 (9th Cir. 2002).

#### a. Duran

In the summary judgment motion, the CCS Defendants challenged the admissibility of Duran's opinions as unreliable because Duran cited no support for his speculative conclusions. I stated in my prior order that Bynum "provides no information on what behavior warrants calling

5

a doctor or psychiatrist or how long a detainee who is acting psychotic and refusing medical screening may be left in isolation before being treated." ECF No. 191 at 23. Nor did she provide information about what a reasonable nurse would do in response to what each defendant nurse observed in this case. *Id.* at 22-23. On reconsideration, Bynum argues that I failed to consider Duran's opinions. For the reasons explained below, Duran's opinions do not fill the evidentiary gaps because his opinions are unsupported and thus unreliable.

Federal Rule of Evidence 702 governs the admissibility of Duran's opinions. Under Rule 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

To be admissible, expert testimony thus must be both relevant and reliable. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotation omitted), *as amended* (Apr. 27, 2010). Medical expert testimony should be admitted "if physicians would accept it as useful and reliable, but it need not be conclusive because medical knowledge is often uncertain." *Id.* (quotation omitted). Where there is a sufficient foundation for the testimony, it is up to the jury to evaluate the expert's credibility. *Id.* at 565-66.

The proponent of expert testimony "has the burden to establish its admissibility." *United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced*, 530 F.3d 899, 904 (9th Cir.

2008). Rule 702's inquiry is "flexible," and should be applied in favor of admitting the evidence. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quotation omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

Duran opines that the "standard of care, given Mr. Bynum's behavior, mental state and obvious inability to care for himself, was to have Mr. Bynum [be] seen and . . . treated by a physician within 2 or 3 hours of arrival and to have him admitted to a hospital or infirmary for a physical and mental evaluation and treatment until his very frank and obvious psychosis was under control." ECF No. 178-7. Duran does not cite to anything that establishes this standard of care. He cites no medical literature and he does not tie the standard to his own experience.

He also opines that Mr. Bynum's "psychosis could have been controlled and the stress and dehydration which led to the Plaintiff's heart stoppage would have been prevented." *Id.* at 12. Duran again cites to nothing to support his position that stress and dehydration caused the heart attack. He points to nothing in Mr. Bynum's medical records or any documented observations that suggests Mr. Bynum was dehydrated and he does not cite to any medical authority for the proposition that dehydration causes or contributes to heart attacks. He does not state how Mr. Bynum's "psychosis" could have been controlled or how long that would have taken.

Next, he opines that each of the nurses "who had the opportunity to observe Mr. Bynum . . . should have known from Mr. Bynum's behavior that Mr. Bynum faced a substantial risk of harm to himself and had a serious medical need." *Id.* Duran does not identify the serious medical need to which he is referring and, much like Bynum's briefs, does nothing to evaluate what each nurse saw and explain why failing to have Mr. Bynum medically or psychologically

7

evaluated more promptly was objectively unreasonable based on that person's observations or knowledge.

Finally, Duran opines that the failure to provide medical treatment sooner caused the heart attack. *Id.* He likewise states in one of his rebuttal reports that, had Mr. Bynum "been sent timely to an emergency room for evaluation and treatment, the timely diagnosis of sepsis or other possible condition leading to his [heart attack] would have resulted in appropriate medical care and the present outcome would likely have been preventable." ECF No. 178-9 at 3. But Duran does not identify what tests a doctor or psychiatrist would have performed, how that would have resulted in treatment that would have prevented the heart attack, and whether that treatment could have prevented the heart attack even if administered in the timeframe Duran proposes.

Duran's opinions are unreliable because they are based on nothing more than his say so. *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quotation omitted)). He does not reliably tie his opinions to the facts of the case or ground them in medical literature. To the extent he bases his opinions on experience, he has not "explain[ed] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. I therefore exclude his opinions.

### b. *Gibson*

Bynum relies on *Gibson* to argue the nurses were deliberately indifferent. In *Gibson*, the plaintiff, Stephen Gibson, had manic depressive disorder, had been hospitalized several times for it, and had been prescribed medication to control it. 290 F.3d at 1180. The arresting officers

found the medication and provided it to the nurse on duty at the jail when the plaintiff was placed in custody. *Id.* at 1182. The nurse knew the medication was used "to stabilize somebody who was suffering from mental illness," but there was no evidence that she told anyone else on duty that the plaintiff suffered from mental illness. *Id.* The plaintiff repeatedly slipped out of his waist chain, banged on the cell door, and became combative with correctional officers who tried to further restrain him, resulting in multiple deputies applying force to control him. *Id.* at 1182-83. The plaintiff continued to struggle until he had a heart attack and died. *Id.* at 1183.

The Ninth Circuit concluded that a reasonable jury could find the nurse was deliberately indifferent to Gibson's serious medical need because she knew Gibson was in the midst of a manic state given her training, his behavior, and her knowledge of his prescription for psychotropic medication that could have stabilized him. *Id.* at 1194. The court also concluded that a reasonable jury could conclude that "a trained nurse would know that hospitalization could have relieved Gibson's condition, and that if Gibson remained in the jail, he presented a danger both to himself and to others," but she did not act on this knowledge. *Id.*

Unlike the nurse in *Gibson*, however, there is no evidence that Mr. Bynum suffered from any psychological issue or that he had been prescribed medication for it. Thus, there is no evidence that any nurse knew about a mental health condition or the availability of palliative medication and failed to act on that knowledge. Instead, the evidence shows that numerous nurses documented their observations of Mr. Bynum being uncooperative, combative, anxious, and making nonsensical statements or potentially hallucinating, while at other times he was calm and would respond appropriately to questions. *See, e.g.*, ECF Nos. 178-3 at 2, 6-8; 178-4 at 7-10; 178-5 at 2, 10-16; 178-17. What is lacking in this case is any admissible evidence to raise an issue of fact (as to each nurse) that failure to ensure Mr. Bynum was seen by a doctor or sent to

the hospital sooner crossed the line from a professional judgment call to being objectively unreasonable. I therefore deny reconsideration.

**B. State Law Failure to Provide Medical Care**

I dismissed Bynum's state law claim for failure to provide medical care because she did not provide an expert affidavit as required by Nevada law. ECF No. 191 at 24-25. Nevada Revised Statutes § 41A.071 provides that a plaintiff's medical malpractice complaint must be dismissed if it is not accompanied by an expert affidavit. There are two exceptions to the expert affidavit requirement. First, the common law doctrine of *res ipsa loquitur* is codified in § 41A.100(1). *Peck v. Zipf*, 407 P.3d 775, 779 (Nev. 2017). Under § 41A.100(1), an expert affidavit is not required under any of five statutorily enumerated circumstances. *Id.* Second, an affidavit is not required where "the reasonableness of the health care provider's actions can be evaluated by jurors on the basis of their common knowledge and experience." *Est. of Curtis v. S. Las Vegas Med. Invs., LLC*, 466 P.3d 1263, 1267 (Nev. 2020) (quotation omitted). This exception is "narrow," and "applies only to situations involving negligence that is apparent without any expert testimony." *Id.* (emphasis omitted). For example, this second exception applied in *Curtis* where the nurse administered the wrong drug because she had mixed up two prescriptions. *Id.* at 1269. But this exception "does not apply to situations where the professional exercises medical judgment." *Id.* at 1268.

Bynum argues both exceptions apply here. I decline to consider her arguments regarding the common knowledge exception because she could have argued it in response to the summary judgment motion but did not.

As for *res ipsa loquitor*, Bynum argues that one of the statutorily specified circumstances that excuses the affidavit requirement applies here: an "injury was suffered during the course of

10

treatment to a part of the body not directly involved in the treatment or proximate thereto." Nev. Rev. Stat. § 41A.100(1)(d). She contends the nurses were treating Mr. Bynum by keeping him restrained and monitoring him while he was in isolation when he suffered a heart attack. She asserts the nurses were not treating Mr. Bynum's heart or any proximate body part but he suffered injury to his heart. The CCS Defendants respond that Bynum did not plead a *res ipsa loquitor* claim, so she could not assert it at summary judgment. Alternatively, they argue they were not treating any particular part of Mr. Bynum's body, so this exception does not apply. They contend Bynum takes issue with the treatment or lack thereof being injurious in and of itself, and that is not a *res ipsa loquitor* theory.

Bynum's argument fails under *Curtis*. In that case, the plaintiff alleged that a nursing home was negligent in failing to monitor a patient who was incorrectly administered morphine. 466 P.3d at 1269-70. The Supreme Court of Nevada determined that the nursing home's decision not to transfer the patient to a hospital and instead monitor her, but then failing to check her vital signs for several hours, were decisions that required professional judgment. *Id.* The court then rejected the argument that § 41A.100(d) dispensed with the affidavit requirement in this circumstance. *Id.* at 1270. The court stated that the "injury the Estate alleges does not fit within" that exception because the patient "suffered no injury to a part of the body not directly involved in the treatment—rather, the treatment itself was injurious." *Id.* at 1270 (internal quotation marks omitted).

Likewise, in this case, the nurses' decisions about what conditions should trigger a referral to a doctor, psychiatrist, or hospital while they were monitoring Mr. Bynum and how quickly Mr. Bynum should have been seen are matters of professional judgment. And like the plaintiff in *Curtis*, Bynum is complaining about the alleged lack of treatment as itself being

11

injurious. She thus was required to have an expert affidavit. Consequently, I deny reconsideration on the state law claim as to all defendants.

## III. CONCLUSION

I THEREFORE ORDER that plaintiff Charlene Bynum's motion for reconsideration **(ECF No. 202) is DENIED**.

I FURTHER ORDER that the CCS Defendants' motion for judgment **(ECF No. 195) is DENIED as moot**.

I FURTHER ORDER that, consistent with this order and my order at ECF No. 242, the clerk of court is instructed to enter final judgment against plaintiff Charlene Bynum and in favor of the following defendants: Correct Care Solutions, LLC, Joe Haplin, Francesca Noce, Joseph Avena, Lara Nares, Christopher Nehls, Haydee Tolentino, Christina Schade, Barbara Buttino, John Darden, Jennifer Swan, City of North Las Vegas, Jacob Ray, Rodrigo Delara, John E. Tonry, Jesse L. Cesena, Alexander Perez, Jeffrey Lytle, John Lansing, Scott Nielsen, and Steven McKlein.

I FURTHER ORDER the clerk of court to close this case.

DATED this 29th day of June, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE